UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NANCY NEGRON,<br><br>                    Plaintiff,<br><br>          v.<br><br>COMMISSION OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>                    Defendant. | CIVIL ACTION NO. 3:22-CV-00955<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

This is an action brought under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Nancy Negron ("Negron")'s claims for disability insurance benefits ("DIB") under Title II of the Social Security Act. (Doc. 1). The parties consented to proceed before the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 9). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision shall be **VACATED**, and the case will be **REMANDED** for further consideration.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

On November 25, 2019, Negron filed an application for disability insurance benefits, alleging disability beginning on June 1, 2019. (Doc. 11-5, at 5). Negron's claims were initially denied by the Social Security Administration on September 21, 2020, and upon reconsideration on January 21, 2021. (Doc. 11-2, at 37). Thereafter, Negron filed a request

for a hearing, which was held before Administrative Law Judge ("ALJ") Theodore Burock on July 1, 2021. (Doc. 11-2, at 50). In a written opinion dated August 26, 2021, the ALJ determined that Negron was not disabled and, therefore, not entitled to the benefits sought. (Doc. 11-2, at 34). Negron appealed the decision to the Appeals Counsel, who denied Negron's request for review on March 10, 2022. (Doc. 11-2, at 22).

On June 15, 2022, Negron initiated the instant action by filing a complaint. (Doc. 1). The Commissioner responded on September 21, 2022, providing the requisite transcripts from the disability proceedings. (Doc. 10; Doc. 11). The parties then filed their respective briefs, with Negron alleging two errors warrant reversal or remand. (Doc. 12; Doc. 18).

II. **STANDARD OF REVIEW**

In order to receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment[1] that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

    A.  A<small>DMINISTRATIVE</small> R<small>EVIEW</small>

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200-01 (3d Cir. 2019); 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[2] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f).

    B.  J<small>UDICIAL</small> R<small>EVIEW</small>

---

[2] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1 (effective June 12, 2015, through July 19, 2015).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. Mar. 28, 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. Nov. 3, 2003).

The question before the Court, therefore, is not whether Negron is disabled, but whether the Commissioner's finding that Negron is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*,

512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

### III. THE ALJ'S DECISION

In his written decision, the ALJ determined that Negron "was not under a disability, as defined by the Social Security Act, at any time from June 1, 2019, the alleged onset date, through December 31, 2020, the date last insured." (Doc. 11-2, at 46). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520. At the onset, the ALJ determined that Negron last met the insured status requirements of the Social Security Act on December 31, 2020. (Doc. 11-2, at 39).

#### A. STEP ONE

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R § 404.1520(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574. Here, the ALJ determined that Negron "did not engage in [SGA] during the period from her alleged onset date of June 1, 2019 through her date last insured of December 31, 2020." (Doc. 11-2, at 39).

B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore not disabled." 20 C.F.R. § 404.1520(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step. Here, the ALJ found that Negron had the following medically determinable severe impairments: lumbosacral disc disease. (Doc. 11-2, at 39). In addition, the ALJ found that Negron had the following non-severe impairments: anxiety disorder, depressive disorder, and carpal tunnel syndrome. (Doc. 11-2, at 39-42).

C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet a listing, then the claimant is considered disabled, otherwise, the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that none of Negron's impairments, considered individually or in combination, meet or equal the severity of listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

1. (Doc. 11-2, at 42). Specifically, the ALJ considered Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)). (Doc. 11-2, at 42).

### D. Residual Functional Capacity

Between steps three and four, the ALJ determines the claimant's RFC, crafted upon consideration of the medical evidence provided. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c).

Here, Negron alleged that her impairments caused constant pain, cognitive side-effects, including lack of focus, depression, and anxiety. (Doc. 11-2, at 43). The ALJ found that while Negron's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Negron's statements about the intensity, persistence, and the limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 11-2, at 43). The ALJ then went on to detail Negron's medical records and treatment history, activities of daily living, and medical opinion evidence. (Doc. 11-2, at 43-44). After weighing and considering the evidence of record, the ALJ determined that Negron had the RFC "to perform light work as defined in 20 CFR 404.1567(b)," with additional limitations:

> [Negron] is limited to the performance of routine, repetitive tasks; can only frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; can tolerate no concentrated exposure to extreme cold; can never climb ladders/ropes/scaffolds; and must avoid all exposure to hazards including unprotected heights and dangerous machinery.

(Doc. 11-2, at 42).

E. STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform [her] past relevant work despite his limitations, [she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, based on the testimony adduced from a vocational expert at Negron's administrative hearing, the ALJ determined that Negron "was capable of performing past relevant work as a wax molder as generally performed." (Doc. 11-2, at 45).

Because the ALJ found that Negron was capable of performing past relevant work, a determination of "not disabled" was required. *See* 20 C.F.R. § 404.1520(a)(4)(iv). Accordingly, the ALJ concluded that Negron was not disabled and denied her application for benefits. (Doc. 11-2, at 46).

IV.  **DISCUSSION**

On appeal, Negron advances two main arguments for reversal or remand. (Doc. 12, at 10). First, Negron argues that the ALJ's finding at step two assessing Negron's severe impairments, and the resulting RFC, are not supported by substantial evidence because the decision did not consider Negron's leg impairment at any step of the disability evaluation and erroneously found carpel tunnel syndrome was not a medically determinable impairment. (Doc. 12, at 13). Second, Negron also argues that the ALJ's RFC assessment is not supported by substantial evidence because the rationale supplied by the ALJ is internally inconsistent, does not provide a reasonable basis for its conclusions, and fails to create a logical bridge between the assessed work limitations and the evidence of record. (Doc. 12, at 19).

In response, the Commissioner argues that substantial evidence supports the ALJ's decision that Negron was not disabled. (Doc. 18, at 2). Specifically, the Commissioner contends substantial evidence supports the ALJ's evaluation of Negron's impairments at step two of the sequential evaluation and the ALJ's evaluation of Negron's RFC for a limited range of light work. (Doc. 18, at 13-34).

    A.  SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE ALJ'S EVALUATION OF NEGRON'S LEG IMPAIRMENT AT STEP TWO.

Negron argues that the ALJ committed an error of law at this step in: (1) failing to consider Negron's severe leg impairment; and (2) finding that Negron's carpal tunnel syndrome was not a medically determinable impairment. (Doc. 12, at 14-19). Negron contends "the ALJ's decision does not properly consider all of [Negron]'s medically determinable impairments in assessing her RFC because her leg impairment is not mentioned at step two, nor is it substantively discussed in the RFC assessment, despite the fact it is [Negron]'s primary alleged impairment." (Doc. 12, at 14). Negron cites medical evidence of

record, arguing that "[t]he record is clear that she had a history of a severe leg fracture and still has residual effects, as well as pins and rods that were surgically implanted in her leg." (Doc. 12, at 15). Furthermore, Negron contends the ALJ's finding that carpal tunnel syndrome is not a medically determinable impairment is not supported by substantial evidence because the requisite objective medical findings are present to establish that Negron suffers with carpel tunnel syndrome of the left hand, and that the ALJ erroneously mischaracterized the record. (Doc. 12, at 17-18). Negron asserts that the ALJ's assessment "seriously calls into question the degree to which this ALG actually reviewed and understood the record." (Doc. 12, at 14-18).

Conversely, the Commissioner argues that Negron fails to show error where the ALJ considered her impairments at the later steps of the analysis when assessing her RFC. (Doc. 18, at 13). The Commissioner maintains that the ALJ's step two analysis does not require remand because an ALJ's step two determination is merely a threshold issue and the ALJ explicitly considered Negron's leg pain and carpal tunnel syndrome later in assessing the RFC. (Doc. 18, at 14). The Commissioner also argues that while Negron has failed to show how she has a severe impairment, based on her leg, the ALJ nevertheless addressed Negron's leg pain and relied on the state agency doctors, who declined to assess greater limitations based on a leg impairment. (Doc. 18, at 15). Next, the Commissioner contends substantial evidence supports the ALJ's finding that Negron's carpel tunnel syndrome was not medically determinable, or otherwise did not cause functional limitations requiring restrictions in the RFC. (Doc. 18, at 21-22). A review of the record convinces the Court that the ALJ's step two analysis was so limited as to preclude meaningful judicial review. Therefore, the Court will reverse and remand this matter.

At step two of the sequential evaluation process, the ALJ considers whether a claimant's impairment is (1) medically determinable or non-medically determinable, and (2) severe or non-severe; this step is essentially a threshold test. 20 C.F.R. § 416.920(a)(4)(ii). As a baseline matter, the Third Circuit has stated that "[t]he burden placed on an applicant at step two is not an exacting one." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). A plaintiff merely must pass a *de minimis* screening test. *McCrea*, 370 F.3d at 360.

To be found medically determinable, an impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521; *see also* 20 C.F.R. § 404.1502 (defining objective medical evidence, laboratory findings, and signs). This means that to be considered, an impairment must be established by objective medical evidence from an acceptable medical source. A claimant's statement of symptoms, a diagnosis that is not supported by objective evidence, or a medical opinion not supported by objective evidence, is not enough to establish the existence of an impairment. 20 C.F.R. § 404.1521; SSR 96-4p, 1996 WL 374187 at *1 ("regardless of how many symptoms an individual alleges, or how genuine the individual's complaints appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities . . . ."); *see also* 20 C.F.R. § 404.1502(i)(defining symptoms). A claimant's symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect a claimant's ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment is present. 20 C.F.R. § 404.1529(b). Thus, non-medically determinable impairments are excluded from an ALJ's RFC assessment.

Where an ALJ finds in a claimant's favor at step two, even if he or she erroneously concluded that some of the claimant's other impairments were non-severe, the error is harmless if the sequential evaluation process continues beyond step two and the functional limitations associated with the impairment are accounted for in the RFC. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (stating that, "[b]ecause the ALJ found in [plaintiff's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless" (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005))); *see also Pailin v. Colvin*, No. 10-4556, 2013 WL 5924972, at *2 (E.D. Pa. Nov. 5, 2013). "Error at step two is harmless when an ALJ proceeds through the subsequent steps because, when an ALJ makes an RFC determination, he [or she] must consider the combined effect of all the plaintiff's impairments, whether those impairments are severe or not-severe." *Williams v. Comm'r of Soc. Sec.*, No. 12-5637, 2013 WL 4500335, at *17 (D.N.J. Aug. 21, 2013) (citing 20 C.F.R. § 404.1523); *see also* 20 C.F.R. § 404.1545 (ALJ must consider even non-severe impairments when making an RFC assessment).

However, the error is not harmless where, as here, the ALJ has found an impairment not medically determinable. Unlike a non-severe impairment, a non-medically determinable impairment is *not* considered in assessing the claimant's RFC. *See Godwin v. Kijakazi*, No. 3:20-CV-02421, 2022 WL 992736, at *5 (M.D. Pa. Apr. 1, 2022) (explaining that "[b]ecause the ALJ is only required to consider medically determinable impairments, . . . the ALJ's failure to consider the plaintiff's alleged degenerative disc disease and arthritis conditions in later determining her RFC was not in error") (citations omitted); *see also Roldan v. Kijakazi*, No. 3:21-CV-621, 2023 WL 2567988, at *16 (M.D. Pa. Feb. 28, 2023), *report and recommendation adopted*, No. 3:21-CV-621, 2023 WL 2563080 (M.D. Pa. Mar. 17, 2023)

(holding that the "harmless error analysis" does not apply where the ALJ finds an impairment not medically determinable); *Vazquez-Rivera v. Kijakazi*, No. 4:21-CV-215, 2022 WL 4486403, at *7 (M.D. Pa. Sept. 27, 2022) ("an ALJ's failure to find an impairment medically determinable at step two, or to support a finding that an impairment is not medically determinable, makes the ALJ's finding at subsequent steps of the sequential evaluation process defective and is cause for remand").

In the present case, the record reveals that Negron filed for Title II disability benefits due to the following illnesses, injuries, or conditions: carpal tunnel syndrome, arthritis, anxiety, pins and rod in left leg, and possible pinched nerve. (Doc. 11-3, at 3; Doc. 11-6, at 3). At step two of the sequential analysis, the ALJ determined that "[t]hrough the date last insured, [Negron] had the following severe impairment: lumbosacral disc disease (20 CFR 404.1520(c))." (Doc. 11-2, at 39). The ALJ explained that Negron's lumbosacral disc disease "is sufficiently established in the record, has lasted or is expected to last more than twelve continuous months, and causes more than minimal restrictions in [Negron]'s ability to perform work-related activities as discussed in further detail below, and is, therefore, a severe medically determinable impairment." (Doc. 11-2, at 39). In addition, the ALJ determined that Negron's anxiety, depression, and carpal tunnel syndrome are non-severe medically determination impairments. (Doc. 11-2, at 39-41). Regarding Negron's carpal tunnel syndrome, the ALJ explained that despite Negron's allegations, the "treatment record reveals [Negron] made little complaints of any symptoms and received no treatment for her allegations of carpal tunnel syndrome prior to her date last insured. Accordingly, the undersigned finds [Negron]'s allegations of carpal tunnel syndrome not medically determinable prior to the December 2020 date last insured." (Doc. 11-2, at 39-42).

The Court finds that remand is warranted because the ALJ did not explain why he determined that Negron's leg impairment was not a medically determinable impairment. With respect to Negron's leg pain, there are multiple instances in the record where a medical doctor has noted a diagnosis of Negron's right leg fracture and residual effects as well as hardware surgically implanted in her leg. (Doc. 11-7, at 9, 11-12, 33, 42-45). Further, as Negron notes, in her application she explicitly filed for disability due to "pins and rod" in her leg. (Doc. 11-3, at 3; Doc. 11-6, at 3); *see Vazquez-Rivera*, 2022 WL 4486403, at *8. There well may have been substantial evidence on the record to support a finding that Negron's leg pain was not a medically determinable impairment, but the ALJ had a duty to explain his reasoning for rejecting the diagnoses from the State Agency consultative examiner. (Doc. 11-7, at 9, 33, 45); *see Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). Without the ALJ's reasoning on the record, the Court cannot conduct a meaningful review. *See James M. v. Comm'r of Soc. Sec.*, No. 1:20-CV-08745-NLH, 2022 WL 3152638, at *4 (D.N.J. Aug. 8, 2022) (remanding decision where ALJ did not explain why claimant's headaches were not medically determinable impairments despite multiple instances in the record where a medical doctor noted a diagnosis of headache) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)); *see also Roldan*, 2023 WL 2567988, at *15 (remanding decision where ALJ's error stemmed not from a step-two severity conclusion, but from ALJ's conclusion that claimant's fibromyalgia was not a medically determinable impairment).

The ALJ has a duty to consider all medically determinable impairments that a claimant is able to establish prior to his last date insured. *See Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) ("The claimant must also establish that the onset date of disability occurred prior to the expiration of the claimant's insured status."). Here, the ALJ failed to mention a

condition that was present in in Negron's medical records in his step two analysis. (Doc. 11-2, at 39-42). Negron did not offer testimony about the symptoms and limitations her leg impairment causes. Furthermore, the potential limiting effects of this condition may include exertional and non-exertional functions. This step two error calls into question the completeness of the ALJ's RFC assessment and undermines the support for his conclusions at steps four and five of the sequential evaluation process. For these reasons, remand is appropriate to determine if Negron's leg impairment is a medically determinable impairment and, if so, whether or not it is severe. *See Vazquez-Rivera*, 2022 WL 4486403, at *8; *James*, 2022 WL 3152638, at *5.

Accordingly, for the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. Therefore, the decision of the Commissioner shall be vacated and the case remanded for further proceedings consistent with this Memorandum.

B.  THE COURT DECLINES TO ADDRESS NEGRON'S REMAINING ARGUMENTS.

Because the Court has vacated and remanded the decision of the Commissioner for further consideration, concluding that the ALJ's step-two evaluation is not supported by substantial evidence, the Court declines to address Negron's remaining arguments. "A remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. Jan. 13, 2016). The Court's evaluation of Negron's additional contentions would be futile given that the ALJ's reconsideration of Negron's leg pain, in combination with her other impairments, may yield a different result.

V.  **REMEDY**

As a final matter, the Court addresses whether this case should be remanded to the

Commissioner for further administrative proceedings or whether reversal and an award of benefits is appropriate. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 501 U.S. 89, 100–01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000); *see e.g. Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Here, the appropriate measure is to remand for further development of the record. Upon remand, the ALJ is instructed to consider and make specific findings as to all relevant probative medical evidence.

## VI. CONCLUSION

Based on the foregoing, the Commissioner's decision to deny Negron's disability benefits is **VACATED**, and the case is **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g). Further, the Clerk of Court is directed to **CLOSE** this case. An appropriate Order follows.

Dated: September 12, 2023

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**